UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

LEONARDO COMESANAS,

      Plaintiff,

v.                                                              Case No.  5:18-cv-268-TKW/MJF

MICHAEL PELT, *et al.,*

      Defendants.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff Leonardo Comesanas, a Florida prisoner proceeding *pro se* and *in forma pauperis*, has filed a fourth amended civil rights complaint under 42 U.S.C. § 1983. (Doc. 27). Defendant Larry Childs moves to dismiss the complaint for failure to exhaust administrative remedies. (Doc. 56). Comesanas opposes the motion. (Doc. 58). The undersigned recommends that Defendant Childs's motion to dismiss be granted and that this case be dismissed for Comesanas's failure to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a).[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I. BACKGROUND AND PROCEDURAL HISTORY

Comesanas initiated this action on November 1, 2018, by filing a civil rights complaint under 42 U.S.C. § 1983. (Doc. 1). On November 28, 2019, Comesanas filed a fourth amended complaint, which is the operative complaint. (Doc. 27).

Comesanas's fourth amended complaint names as Defendants two former prison officials at Gulf Correctional Institution—Michael Pelt and Larry Childs.[2] Comesanas claims that on July 7, 2016, the Defendants were deliberately indifferent to a substantial risk to his safety, in violation of the Eighth Amendment, when Childs falsely told other inmates that Comesanas had tipped off correctional staff about inmates' possession of drugs and an impending attack on Pelt. As a result, Comesanas was attacked by an unidentified inmate and permanently scarred on his face. (Doc. 27 at 5-9). Comesanas seeks $1,000,000.00 in damages. (*Id*. at 9).

Defendant Childs was served with process on September 24, 2020, (Doc. 47). Childs moves to dismiss Comesanas's complaint on the grounds that: (1) Comesanas did not truthfully disclose his litigation history in that he failed to disclose a federal

---

[2] Initially, Comesanas listed the Defendants as "Officer Michael Pell" and "Captain Shield." (Doc. 27 at 1). The Defendants have been identified as former Officer Michael Pelt and former Captain Larry Childs. (*See* Docs. 37, 38).

habeas case he filed in 2010 in the Southern District of Florida; and (2) Comesanas failed to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a). (Doc. 56).

Defendant Michael Pelt has not been served with process because the United States Marshals Service was unable to locate him with reasonable effort. (*See* Doc. 48 (Order detailing service efforts)). Comesanas recently notified this court—on March 11, 2021—that he believes Pelt is employed at the Gulf County Sheriff's Department. (Doc. 59 at 3). The undersigned has delayed additional service efforts on Pelt pending resolution of Childs's dispositive motion.

Comesanas responded in opposition to Childs's motion to dismiss. (Doc. 58). Comesanas argues that dismissal is improper because (1) his failure to disclose his habeas case was not malicious and (2) he properly exhausted available administrative remedies. (*Id.*).

## II. ALLEGATIONS OF COMESANAS'S FOURTH AMENDED COMPLAINT

Comesanas alleges that on July 6, 2016, he was confined at Gulf Correctional Institution ("Gulf CI") in the F-1 Dormitory ("F-1 Dorm"). (Doc. 27 at 5). As part of Comesanas's work assignment that day, he was required to pack the property of two inmates from F-1 Dorm who were under investigation for possessing 6 grams

of K-2 (a synthetic form of marijuana). (*Id*.). Comesanas was in the officer's station with Defendant Pelt packing the property. (*Id*.).

Pelt informed Comesanas that staff had received an anonymous note written on an inmate request form, warning staff that two inmates from F-1 Dorm were planning to stab Pelt because he was placing too many inmates in confinement. (*Id*. at 5-6). Pelt asked Comesanas if he knew who was behind the planned attack. (*Id*. at 5). Comesanas responded that he knew nothing about it. (*Id*.). Pelt did not believe Comesanas because the anonymous note came from someone in F-1 Dorm. Pelt became angry with Comesanas. (*Id*.).

Pelt called Captain Childs on the telephone and discussed the validity of the anonymous note—whether or not it was a hoax. (*Id*. at 6). Pelt informed Childs that one of his orderlies told him about the anonymous note but could not give Pelt the name of the inmate who wrote it. (*Id*.). After Pelt finished the call, he ordered Comesanas to return to his dormitory. (*Id*.).

The following day, July 7, 2016, Comesanas was in his dormitory when he was approached by several inmates. (*Id*. at 6). The inmates asked Comesanas about his "encounter" with Pelt. They told him that drugs had been confiscated from an inmate in F-2 Dorm and that the inmate was placed in confinement pending an investigation. (*Id*.). The inmates asked Comesanas if he had "confidentially

informed" on the inmate under investigation for drugs. (*Id*.). Comesanas told the inmates that he was not an informant and that he knew nothing. (*Id*.).

Later that day, Comesanas went to the recreation yard. As he was walking with friends, an inmate ran past him and slashed the left side of his face. (*Id*. at 6-7). A correctional officer escorted Comesanas to the infirmary. (*Id*. at 7). Defendant Childs asked Comesanas if he knew who cut his face, but Comesanas did not know who attacked him. (*Id*.). Comesanas was placed in administrative confinement pending transfer to another institution. (*Id*.).

While Comesanas was in administrative confinement, someone slipped a note under his cell door stating that he was attacked because Childs "went around telling inmates" that: (1) Comesanas told Pelt about the inmates' plan to attack Pelt; (2) Comesanas was responsible for the inmates being placed in confinement under investigation for planning to attack Pelt; and (3) Comesanas was responsible for the inmate(s) being placed in confinement for possessing K-2. (*Id*. at 7-8). Comesanas alleges that Pelt stopped by his confinement cell, read the note, and took it with him. (*Id*. at 8). Comesanas filed a grievance. The grievance was denied after he was transferred to Avon Park Correctional Institution, which is his present place of confinement. (*Id*.).

### III. Discussion

**A.**   **Defendant Childs's Motion to Dismiss for Comesanas's Abuse of the Judicial Process**

Defendant Childs argues that this case should be dismissed without prejudice for Comesanas's abuse of the judicial process in failing to disclose a habeas case he filed in 2010 in the Southern District of Florida. (Doc. 56 at 2-6). Comesanas admits that he did not disclose his prior habeas case, but he argues that he was not "avoiding proper disclosure of prior litigation purposely." (Doc. 58 at 2-4). Comesanas explains that he is a Cuban national who speaks little English, that his institution does not have any bilingual certified law clerks, and that his failure to disclose the habeas case was an "inadvertent mistake" arising from his "inability to read, write, and have full comprehension of the English language." (*Id*. at 4-5).

The events giving rise to this lawsuit occurred in July 2016. If this court dismissed this case without prejudice as an abuse of the judicial process, the dismissal would have the effect of a dismissal *with* prejudice because Comesanas would be barred from re-filing his claim due to the running of the 4-year statute of limitations. *Stephenson v. Warden, Doe*, 554 F. App'x 835, 837 (11th Cir. 2014) (citations omitted).

"Dismissals with prejudice are drastic remedies that are to be used only where lesser sanction would not better serve the interests of justice." *Id*. at 837 (citing *Justice v. United States*, 6 F.3d 1474, 1482 n.15 (11th Cir. 1993)). Accordingly, "dismissals with prejudice are not appropriate unless the district court finds both that a clear record of delay or willful misconduct exists, and that lesser sanctions are inadequate to correct such conduct." *Id*. at 837 (citing *Zocaras v. Castro*, 465 F.3d 479, 483 (2006)). "Mere negligence is insufficient to justify a finding of delay or willful misconduct." *Id*.

This court need not decide whether Comesanas's omission warrants dismissal of this case because Childs's exhaustion defense is dispositive of this action.

## B.   Defendant Childs's Motion to Dismiss for Comesanas's Failure to Exhaust Administrative Remedies

Childs asserts that Comesanas failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (Doc. 56 at 6-17).

### 1.   *The PLRA's Exhaustion Requirement*

The PLRA provides in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, whether they allege excessive force or some other wrong, and whether they seek injunctive relief, monetary damages, or both. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Exhaustion of available administrative remedies is a mandatory pre-condition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001) ("The 'available' 'remed[y]' must be 'exhausted' *before* a complaint under § 1983 may be entertained.") (emphasis added); *see also Porter*, 534 U.S. at 524-25 ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").

"[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. An "untimely or otherwise procedurally defective" grievance will not properly exhaust administrative remedies. *Id*. at 83.

Page 8 of 29

"To determine 'proper exhaustion' in prisoner civil rights actions, courts must look to the requirements of the 'prison grievance system.'" *Gipson v. Renninger*, 750 F. App'x 948, 951 (11th Cir. 2018) (quoting *Woodford*, 548 U.S. at 95). "A prisoner must comply with rules 'defined not by the PLRA, but by the prison grievance process itself.'" *Id.* (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

Generally, the Florida Department of Corrections' grievance procedure requires an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance at the institutional level with the Warden's office, and (3) submit an appeal to the Office of the Secretary (through the Bureau of Policy Management and Inmate Appeals in the FDC's Central Office). Fla. Admin. Code rr. 33-103.005 to 33-103.007; *see Parzyck v. Prison Health Servs., Inc.,* 627 F.3d 1215, 1218 (11th Cir. 2010).

## 2.    *Procedure for Ruling on an Exhaustion Defense*

A failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of proving. *Jones*, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for

failure to exhaust administrative remedies under the PLRA. The defense of failure to exhaust should be treated as a matter in abatement. *Id*. at 1374. "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quoting *Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *Turner*, 541 F.3d at 1082. First, the court looks to the factual allegations in the defendant's motion, and those in the plaintiff's response. *Id*. If they conflict, the court accepts the plaintiff's version as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*.; *see also Bryant*, 530 F.3d at 1373-74.

If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (citing *Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden

of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies. *See, e.g., Singleton v. Dep't of Corr*., 323 F. App'x 783, 785 (11th Cir. 2009) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.") (citing *Bryant*, 530 F.3d at 1376).

### 3.   *Application of the Turner Procedure*

The factual allegations in Defendant Childs's motion to dismiss and those in Comesanas's response do not conflict with regard to the steps Comesanas took to exhaust his administrative remedies. Childs asserts, and Comesanas agrees, that Comesanas filed one grievance relating to the incident underlying this lawsuit, namely, his grievance to the Office of the Secretary which was docketed as grievance number 17-6-37092. (Doc. 56 at 2 ¶ 6 and Ex. B; Doc. 58 at 3 ¶ 6 and Attach.).

Both Comesanas and Childs have submitted a copy of Comesanas's grievance to the Secretary, which is written in Spanish. (Doc. 56, Ex. B; Doc. 58, Attach.). Childs also provided a *translated* version of Comesanas's grievance. (Doc. 56, Ex. C). Comesanas states that there are four errors in the translation. (Doc. 58 at 8 n.5).

Page 11 of 29

The following is the translated version of Comesanas's grievance with the four translation errors Comesanas identifies emphasized in bold:

>Part A—Inmate Grievance
>a)
>Mrs. Julia **Gómez** I respectfully address you, I cleaned the officers' station, I am the houseman assigned to clean the station in **E. Dom**, one of my bosses was threatened and another prisoner reported it in writing and they sent for two of the bosses of the **[illegible text]**, the station officer told the captain on duty that he confirmed that indeed, what the letter says is true, that one of his gang members confirmed it. I was cleaning and I listened to the entire conversation in the telephone, the officer told him I cannot tell you the name of who told me what is happening, his F1DOM, the officer never said my name I have nothing to do with it, the captain told the prisoners in the front that I had reported the gang members, and based on that information the other members of the gang told me about the thing, now they all left confinement and sent me to leave everything with me, that I have no problems with their gang → continues in B)
>
>b)
>They sent someone to cut my face as a **Chinese** and in 13 years in prison I have never done an act of treason against anyone. I keep working with the COs all day from 7 am to 7 pm, and then in my room waiting for the next day, I am not part of any gang, I am only a civilian, I spend all my time in the officers for my work and out of trouble, the captain on duty, the reason why he heard the others only the handyman, that I open my mouth so that I want to be suddenly hurt, I do not have video, I respect all the officers in my work and I leave justice and that it be investigated and that these abuses of authority cause this, it has happened before, here I have been in [illegible text] for almost 8 years. Saw this before and this must be stopped, an officer told me if you tell this to anyone, anyone will lose their job, I informed my family and I want this investigation thoroughly. Someone cut my face just for pleasure and I demand justice. Hope you help me, thank you, respectfully

(Doc. 56, Ex. C; *see also* Doc. 58 at 8 n.5 (identifying translation errors)). Comesanas's grievance was classified and logged as a grievance appeal involving "security matters." (Doc. 56, Ex. B, Stokes Decl. and Log).

There is no factual dispute that the Secretary did not respond to the merits of Comesanas's grievance. Instead, a staff member of the Bureau of Policy Management and Inmate Appeals, A. Paynter, returned the grievance without action on procedural grounds, stating:

> Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure[.] The rule requires that you first submit your grievance at the appropriate level at the institution[.] You have not done so or you have not provided this office with a copy of that grievance nor have you provided a valid or acceptable reason for not following the rules[.]

> You have used multiple copies of grievance forms rather than attachments as continuation sheets[.] Note Chapter 33-103[.]007(2)(b), states in part, "If additional space is needed, the inmate shall use attachments rather than multiple copies of form DC1-303[.]"

> Rule requires that allegations/complaints of the nature as the one(s) in your appeal be initiated at the informal level[.]

> The institution should be given the opportunity to respond to your issue[.]

> Based on the foregoing information, your appeal is returned without action[.]

(Doc. 56, Ex. B; Doc. 58, Attach.).

The Office of the Secretary construed the grievance as a grievance appeal.

The rule governing grievance appeals provides, in relevant part:

> (5) Grievance appeals -- If the grievance appeal is not a direct grievance to the Office of the Secretary, the inmate shall:
>
> (a) Attach a copy of his formal grievance and response, except when appealing issues regarding requests for protective management, admissible reading material, sentence structure (release date calculations), inmate banking, emergencies or allegations of reprisal. (These may be filed directly to the Office of the Secretary).
>
> (b) Attach a copy of his informal grievance and response, except when appealing issues regarding medical, Americans with Disabilities Act, gain time governed by Rule 33-601.101, F.A.C. Incentive Gain Time, placement in close management and subsequent reviews, return of incoming mail governed by subsection 33-210.101(14), F.A.C., disciplinary action (does not include corrective consultations) governed by Rule 33-601.314, F.A.C.

Fla. Admin. Code r. 33-103.007(5)(a)-(b) (2014) (currently numbered r. 33-103.007(2)(a)-(b) (2018)).[3]

_____

[3] Rule 33-103.007 of the Florida Administrative Code, titled "Appeals and Direct Grievances to the Office of the Secretary," was amended effective November 7, 2018. *See* Fla. Admin. Code r. 33-103.007 (2018). Throughout both parties' briefs, they cite to the current version of Rule 33-103.007. The version of the Rule in effect in 2016, when the events giving rise to this lawsuit occurred, was the 2014 version. The undersigned has compared the two versions. Although the substance of the relevant provisions is the same, some subsections are numbered differently. For

Rule 33-103.007 also provides that "[a] grievance appeal or direct grievance may be returned to the inmate for any one or more of the reasons stated in Rule 33-103.014, F.A.C., without further processing." Fla. Admin. Code r. 33-103.007(4)(d) (2014) (currently numbered r. 33-103.007(6)(d) (2018)).

Rule 33-103.014, titled "Reasons for Return of Grievance or Appeal Without Processing," provides, in relevant part:

> (1) The informal grievance, formal grievance, direct grievance, or grievance appeal, hereafter referred to as "grievance," may be returned to the inmate without further processing if, following a review of the grievance, one or more of the following conditions are found to exist. The reasons listed below are the only reasons for returning a grievance without a response on the merits.
> . . . .
>
> (f) The inmate did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable. This evaluation is made on a case by case basis and the reasons for rejecting the complaint will vary with the facts alleged in the complaint.
>
> (g) The grievance did not have the attachments required: informal grievance and response, except as allowed for in paragraphs 33-103.006(3)(a) through (h), F.A.C., or the formal grievance and

---

example, the subsection titled "Grievance appeals" is currently numbered Rule 33-103.007(2). In the 2014 version, this subsection was numbered Rule 33.103.007(5). This Report and Recommendation quotes and cites the 2014 version of Rule 33.103.007, because that was the version in effect at the relevant time and, therefore, controls the exhaustion issue. **For Plaintiff's ease of reference, each citation to the 2014 version is followed by a parenthetical providing the current subsection number.**

Page 15 of 29

response, except as provided for in subsection 33-103.007(6), F.A.C.;

. . . .

(l) The inmate has used multiple copies of grievance forms rather than attachments as continuation sheets.

Fla. Admin. Code r. 33-103.014(1)(f), (g), (l) (2013) (currently numbered the same).

There is no factual dispute that Comesanas did not file an informal grievance or a formal grievance at the institutional level either before or after he received the Secretary's response returning his grievance. (Doc. 56 at 13-16 and Ex. A; Doc. 58 at 2 ¶ 5).

Comesanas argues that his grievance to the Secretary should not have been returned without processing because it satisfied the requirements for a direct grievance—one that may be filed directly with the Office of the Secretary. (Doc. 58 at 7-9). Specifically, Comesanas asserts that the four translation errors "are of such nature as to make it appear different than what was wrote and that an individual was pointed out. An individual was never specifically implicated by Plaintiff, contrary to the translation." (Doc. 58 at 8 n.5). Comesanas also argues that "[t]he substance of said direct grievance (had it been properly translated) clearly points to institution staff as well as the involvement of gang members. Thereby, meeting at least one or more reason pursuant to rule 33-103.007(3)(a)." (*Id*. at 8). Comesanas explains that

Page 16 of 29

his direct grievance "was filed based on a tri-fold reason of an emergency, possible reprisal, and administrative protective management reason(s) in Log #16-6-37092." (*Id*. at 8).

Comesanas's reference to "Rule 33-103.007(3)(a)" is to the subsection currently titled "Direct Grievances." In 2016, the subsection "Direct Grievances" was numbered Rule 33-103.007(6)(a) (2014). The Rule provided, in relevant part:

(6) Direct Grievances.

(a) Emergency grievances and grievances of reprisals, protective management, admissible reading material, grievances concerning sentence structure (release date calculations), inmate banking issues or sexual abuse grievances when the abuse is alleged to have been committed by the Warden of the institution where the inmate is currently housed may be filed directly with the Office of the Secretary using the Request for Administrative Remedy or Appeal, Form DC1-303. Grievances alleging a violation of the Health Insurance Portability and Accountability Act (HIPAA) must be filed directly with the Office of the Secretary using the Request for Administrative Remedy or Appeal, Form DC1-303. The following shall apply:

1. The inmate shall state at the beginning of Part A of Form DC1-303 that the grievance concerns either an emergency or is a grievance of a reprisal. . . .

2. The inmate must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and by-passing the informal and formal grievance steps of the institution or facility, except in the case of a HIPAA violation grievance which must be filed directly with the Office of the Secretary. . . .

Fla. Admin. Code r. 33-103.007(6)(a) (2014) (currently numbered r. 33-103.007(3)(a) (2018)).

An emergency grievance concerns "matters which, if disposed of according to the regular time frames, would subject the inmate to substantial risk of personal injury or cause other serious and irreparable harm to the inmate." Fla. Admin. Code r. 33-103.002(4) (2013) (currently numbered the same). A grievance of reprisal is a "grievance submitted by an inmate alleging that staff have taken or are threatening to take retaliatory action against the inmate for good faith participation in the inmate grievance procedure." *Id*. r. 33-103.002(9) (2013) (currently numbered the same).

Taking as true Comesanas's version of the translated grievance (that it was addressed to "Jones" not "Gomez;" that it identified the dorm as "F-Dorm" not "E-Dorm;" and that it did not identify the attacker as "Chinese"), Defendants are entitled to have the fourth amended complaint dismissed for failure to exhaust administrative remedies. Comesanas did not state at the beginning of Part A of the form that the grievance concerned an emergency or was a grievance of reprisal, nor did the body of his grievance assert an emergency or that he feared reprisal by staff. *See* Fla. Admin. Code r. 33-103.07(6)(a)1. (2014) (currently numbered r. 33-103.007(3)(a)1. (2018)). Comesanas also failed to state the reason for not initially bringing his

complaint to the attention of Gulf CI institutional staff and for by-passing the grievance steps of that institution. *See* Fla. Admin. Code r. 33-103.07(6)(a)2. (2014) (currently numbered r. 33-103.007(3)(a)2. (2018)). Comesanas's grievance to the Office of the Secretary properly was construed as a grievance appeal and properly was returned without action under the Florida Administrative Code, Fla. Admin. Code rr. 33-103.007 and 33-103.014.

This case is distinguishable from *Dimanche v. Brown*, 783 F.3d 1204 (11th Cir. 2015), where the court determined that the Secretary improperly returned a direct grievance without action. In *Dimanche*, the prisoner complied with the requirements of Fla. Admin. Code r. 33-103.007(6)(a)1. and 2., by identifying his direct grievance as involving "Reprisal for grievances wrote," by stating at the beginning of Part A that he was filing a grievance of reprisal,[4] and by explaining his reasons for bypassing the institutional grievance steps. *Dimanche* at 1208-09, 1211-12. Dimanche stated that he feared for his life and had been "gassed," issued disciplinary reports for filing grievances in the past, and threatened with being gassed to death if he wrote another grievance. *Id*. at 1208-09. Dimanche referenced

---

[4] The first two sentences of Dimanche's grievance read: "I am in fear for my life here at Quincy Annex and at Liberty C.I. On July 3rd, 2010 I was gassed in confinement for grievances that I wrote." *Id*. at 1211.

a "colonel," a "major," a captain and correctional officers as those who were threatening reprisal, and asked the Secretary to remove him from both Liberty CI and Quincy Annex because it was "only a matter of time before I am set up for another false D.R. and I am sent to C.M. to be gassed to death." *Id.*

A staff member, acting on behalf of the Secretary, returned the direct grievance without action and instructed Dimanche that he had to "first submit his appeal at the appropriate level at the institution before sending the grievance to the Secretary." *Id.* at 1209. The staff member gave Dimanche 15 days to file a grievance with the inspector at his institution. *Id.* Dimanche did not refile his grievance.

Dimanche explained to the federal district court that he did not receive the response to his grievance until the 15-day period had expired. He also stated that he did not refile a grievance at the institutional level because the assistant warden, the inspector and prison guards at that institution threatened to retaliate against him if he refiled the grievance. *Id.*

The Eleventh Circuit concluded that the Secretary improperly returned Dimanche's grievance because (1) he clearly identified his grievance as a grievance of reprisal in the first sentence; (2) he explained in his grievance that he had been "gassed" for grievances he wrote; (3) he identified the acting warden and inspector (along with others) as some of the officials who retaliated against him; and (4) he

Page 20 of 29

described being threatened that he would be "gassed to death." *Id*. at 1212-13. The court held that because Dimanche's direct grievance should not have been returned, his failure to pursue his grievance internally did not bar his § 1983 complaint for failure to exhaust administrative remedies. *Id*. at 1214. The court cited *Turner* for the proposition that "[t]he PLRA does not require an inmate to grieve a breakdown in the grievance process." *Id*. at 1214 (quoting *Turner*, 541 F.3d at 1083).

In a later case, *Gipson v. Renninger*, 750 F. App'x 948, 952-53 (11th Cir. 2018), the Eleventh Circuit distinguished *Dimanche* on its unique facts. In *Gipson*, the prisoner filed a grievance directly to the Office of the Secretary stating, at the top of the grievance, that he "believe[d] that there will be some adverse actions (retaliations) if the officers are placed on notice at the institutional level." *Id*. at 950. The grievance was logged as an "emergency grievance." *Id*. The Secretary returned the emergency grievance without action for failure to comply with the FDC's rule requiring that inmates first file a grievance with the institution. The Secretary explained that the institution should be given an opportunity to respond to the issue. *Id*. The Secretary also stated that the prisoner's grievance was not accepted as a grievance of an emergency nature because he had not provided information or evidence to substantiate his fear of reprisal. *Id*. The Secretary's log of grievances Gipson had filed with the Office of the Secretary revealed that Gipson had filed at

least six grievances after his emergency grievance. Five of his grievances were returned without action; one grievance was denied. *Id.*

The Eleventh Circuit determined that Gipson's "emergency grievance" properly was returned without processing under the Florida Administrative Code because that grievance "failed to show he was subject to substantial risk of personal injury." *Id.* at 952 (citing Fla. Admin. Code r. 33-103.002(4), 33-103.014). The court also concluded that even construing the direct grievance as a "grievance of reprisal," the grievance properly was returned without processing because the grievance "lacked factual support for his allegations of threats of retaliatory action by prison staff." *Id.* at 952-53 (citing Fla. Admin. Code rr. 33-103.002(9) and 33-103.014).

The court rejected Gipson's contention that the grievance process was unavailable to him after his direct grievance was returned. *Id*. at 953.[5] The Eleventh Circuit held that Gipson "failed to exhaust his administrative remedies when he filed a single, defective emergency grievance with the Secretary of the FDOC." *Id.*

The circumstances of Comesanas's case are even *more* distinguishable from *Dimanche* than the facts of *Gipson*. Unlike the prisoner in *Dimanche*, Comesanas

---

[5] The court determined that although by that point the informal and formal institutional procedures were not available to Gipson due to threats of reprisal, Gipson could have refiled his grievance as "a proper 'grievance of reprisal' with the Secretary of the FDOC." *Id*. at 953.

(1) did not identify his grievance as an emergency grievance or grievance of reprisal, (2) did not present allegations of an emergency or of staff retaliating against him for accessing the grievance process, and (3) did not clearly state his reason for by-passing the required routine steps for exhausting his administrative remedies at the institutional level. Comesanas's grievance also did not relate to a request for protective management, as Comesanas already was in administrative confinement pending transfer to a different institution. Comesanas's grievance to the Office of the Secretary properly was returned without processing because it failed to meet the requirements of the prison grievance procedure.

After Comesanas's grievance was returned without action in September 2016, Comesanas did not refile his grievance using the informal and formal procedures provided in the Florida Administrative Code. (Doc. 58 at 2). Instead, Comesanas waited two years and then initiated this lawsuit on November 1, 2018. (Doc. 1). He did not file any other administrative grievances relating to the July 2016 incident. (Doc. 58 at 2). Comesanas, therefore, did not properly exhaust his administrative remedies.

Comesanas appears to argue that the administrative process was not available to him after his grievance appeal was returned because (1) he "is a Cuban national with very little English speaking capabilities and no English reading and

Page 23 of 29

comprehension;" (2) his "ability to read, write and/or understand the English language is so poor that he is reliant upon bilingual inmate law clerks;" (3) there are no bilingual inmate law clerks at Avon Park CI; and (4) the Secretary did not provide a Spanish translation of her response to his grievance, which "created a language barrier." (Doc. 58 at 4, 8-9).

In *Ross v. Blake*, the Supreme Court held that a prisoner "must exhaust available remedies, but need not exhaust unavailable ones." 578 U.S. ___, 136 S. Ct. 1850, 1858 (2016). An "available" remedy is one that is "capable of use to obtain some relief for the action complained of." *Id*. at 1859 (quotation marks omitted).

The Supreme Court identified three circumstances in which administrative remedies would be considered unavailable. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." 136 S. Ct. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. Third, an administrative remedy is unavailable "when prison administrators thwart inmates from taking advantage of a

grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860.

As an initial matter, Comesanas does not assert that the informal and formal grievance procedures were unavailable to him *at Gulf CI*, which is where he was housed at the time of the incident and at the time he chose to bypass those procedures and submit a grievance directly to the Secretary. Comesanas had been confined at Gulf CI for 8 years preceding the incident, and he does not allege that a "language barrier" or any other circumstance rendered the informal and formal grievance procedures unavailable there. (*See* Doc. 15, Attach. at 3 (Comesanas's allegation that he was confined at Gulf CI from 2008-2016); Doc. 56, Ex. C (same)).

Comesanas says that he did not follow the informal and formal grievance procedures at Avon Park CI after his grievance was returned by the Secretary, because he has limited English proficiency, the Secretary's response was not in Spanish, and there are no bilingual inmate law clerks at Avon Park CI. Comesanas does not allege, though, that there are no services for limited-English-proficient inmates at Avon Park CI, nor does he describe any effort he made to have the Secretary's response translated or explained to him by staff or other inmates.

Even if this court assumed that, alone, a failure to provide bilingual inmate law clerks *could* make a grievance procedure unavailable, Comesanas's allegations

Page 25 of 29

are not enough to establish that the grievance procedure at Avon Park CI was unavailable to him in this case. The Secretary's grievance log establishes that within a week of Comesanas's grievance appeal being returned on September 16, 2016, Comesanas submitted another grievance appeal to the Secretary's Office concerning a different issue—inadequate medical treatment. (Doc. 56, Ex. B). That grievance appeal was denied on the merits and was not returned without processing. (*Id.*). This shows that Comesanas was capable of accessing, and properly did access, the grievance procedure at the institutional level at Avon Park CI. In other words, the grievance procedure was "available" to Comesanas despite his English-language skills and the lack of bilingual inmate law clerks.

In addition, Comesanas's prosecution of this case demonstrates that he has the ability—whether independently or with the assistance of staff or inmates at Avon Park CI—to comply with instructions written in the English language. He has complied with this court's orders even though they are written exclusively in English. Comesanas has submitted amended complaints in the English language, which describe the July 2016 incident in detail. (*See* Doc. 15 and Attach.; Doc. 21; Doc. 24; Doc. 27).[6]

---

[6] The allegations of Comesanas's pleadings filed in this case also demonstrate an ability to communicate verbally in the English language. For example, Comesanas

Therefore, even if, by itself, an inmate's lack of proficiency with the English language and the lack of bilingual inmate law clerks *could* make a grievance procedure unavailable, Comesanas has not made such a showing here. Comesanas has not demonstrated that the Secretary's failure to provide a Spanish version of her response rendered the administrative remedy "not capable of use to obtain relief" concerning the July 7, 2016, incident. *Ross*, 136 S. Ct. at 1859. Comesanas was required to comply with the prison's grievance procedure before filing this lawsuit, and his improper grievance appeal submitted directly to the Secretary of the FDC does not suffice.

Because Comesanas failed to properly exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), Defendant Childs is entitled to dismissal of Comesanas's fourth amended complaint. Additionally, although Defendant Michael Pelt has not been served with process and, consequently, has not appeared in the case, it is plain that Comesanas's claim against Pelt is subject to dismissal on the same basis. Accordingly, Comesanas's claim against Defendant Pelt

---

describes the substance of the telephone conversation he overheard between Defendants Pelt and Childs on July 6, 2016. (Doc. 27 at 5). Comesanas describes his verbal communications with various inmates on July 6-7, 2016. (*Id*. at 6-8). Comesanas describes conversations he had with Defendant Pelt and Defendant Childs both before and after the July 7, 2016, attack. (*Id*. at 5-8).

should be dismissed *sua sponte* under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to properly exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.  Defendant Childs's motion to dismiss (Doc. 56) be **GRANTED**.

2.  This action be dismissed for Plaintiff's failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).[7]

3.  The clerk of the court be directed to close this case file.

At Pensacola, Florida, this <u>23rd</u> day of March, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and**

___

[7] If this District Court dismisses this action based on failure to exhaust administrative remedies, the dismissal would qualify as a "strike" under 28 U.S.C. § 1915(g). *See Rivera v. Allin*, 144 F.3d 719, 731 (11th Cir. 1998) (holding that a dismissal for failure to exhaust administrative remedies is counted as a strike under § 1915(g)), *abrogated on other grounds by Jones*, 549 U.S. at 215-216.

**Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**